(C.D. 2513)

Eric R. Bachmann Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided February 16, 1965)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff. *John W. Douglas,* Assistant Attorney General (*Richard E. FitzGibbon* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Lawrence, Judge: The problem presented here is whether a certain imported device should be classified for duty as a mathematical instrument or as a drawing instrument.

The importation is described in the record as a "lay-out machine with turntable." It was classified by the collector of customs as a mathematical instrument in paragraph 360 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 360), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty was imposed thereon at the rate of 28½ per centum ad valorem.

Plaintiff's claims for classification in paragraphs 372 and 353 were abandoned at the trial. By amendment to its protest, plaintiff relies upon the claim that the commodity is specially provided for in said paragraph 360 as a drawing instrument which is made dutiable at 21 per centum ad valorem.

Paragraph 360, *supra,* so far as pertinent here, reads as follows:

Scientific and laboratory instruments, apparatus, utensils, appliances (including mathematical instruments but not including surveying instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for:

    Slide rules * * *

    Other * * *_____ 28½% ad val.

Drawing instruments, and parts thereof, wholly or in chief value of metal _____21% ad val.

The sole witness in the case was Jack E. Heyne who, for the past 8 years, had been engaged as a sales engineer and assistant to the president of the plaintiff company, importer of quality machine tools. During that period, utilizing his knowledge as a mechanical engineer, he had been designing and selling machine tools. He was familiar with the subject lay-out machine, having seen it in use in various drafting rooms and had sold and installed one of these machines. The witness produced photographs to illustrate the machine in its entirety. One picture shows the machine set up on a stand whereas the other shows in detail the beam and carriage including a pen which draws the lines. They were received in evidence as plaintiff's exhibit 1. In describing how the device operates, the witness testified—

The purpose of this machine is to accurately draw a drawing. For that reason a white, translucent sheet of paper is fastened to the table, to the actual drawing table. Then lines can be drawn in the X and Y axis by either moving the beam respective to the carriage. * * * The beam consists of a cast iron bridge which is right above the table and it is sliding on rollers in one axis. * * * This beam [marked A] can slide in this X axis, whereas the carriage is fastened onto the beam or it is rather sliding on the beam in the Y axis. * * *

The witness stated that the only difference between the lay-out machine and the standard drawing machine is that the former draws lines more accurately; that it will "plot from one point to another within approximately plus and minus 12 ten-thousandths of an inch," an important factor in the manufacture of tools.

The device is in chief value of metal and is operated manually. When asked if the commodity, which is referred to as a machine, had any mechanical features, the witness replied, "No mechanical features as you may refer to usually, but it is a mechanical product, let's put it that way"; that it is never used to do mathematical computations or calculations, its only function is to draw lines more accurately than on a standard drawing machine.

Heyne described an ordinary drawing machine as one which—

* * * consists of a wooden drawing board to which is attached a scale across the drawing board, usually fastened to two strips of wire by means of four rollers. * * * Another type is that it will consist of a pantograph to which two scales are mounted.

However, the witness stated that the majority of drawing machines to which he referred were used in engineering departments and in drafting rooms and that the imported lay-out machine is likewise used in drafting rooms. Drawings produced thereon are principally used on comparators or profile grinders in the production of dies or form tools. In the opinion of the witness, the device in controversy is a drawing instrument and not a mathematical instrument.

On cross-examination, the witness was asked if the article in controversy is a pantograph, to which he replied in the negative, explaining that—

A pantograph consists of a linkage arrangement swirling around a swivel point, whereas here you have always a straight movement. A pantograph you can move to any point with one movement, whereas here you have two sliding axes.

Plaintiff's brief concerns itself for the most part with a consideration of the legislative history of the present provision for drawing instruments in paragraph 360 of the Tariff Act of 1930 and concludes with a reference to the case of *Alfred Hornung* v. *United States*, 31 Cust. Ct. 126, C.D. 1558. In the *Hornung* case, certain pedometers or step counters classified by the collector of customs as distance-measuring devices in paragraph 368 of the Tariff Act of 1930 were held to be properly classifiable as machines, not specially provided for, in paragraph 372 of said act, as modified, as primarily claimed by plaintiff therein. The alternate claim for classification as mathematical instruments in paragraph 360 was held to be without merit. A comparison of the merchandise and the competing tariff provisions in the instant case with those of the *Hornung* case makes it evident that the latter case is clearly distinguishable.

More in point is the case of *United States* v. *F. Weber Co., Inc.*, 25 CCPA 433, T.D. 49506, to which defendant refers in its brief. In that case, certain pantographs, which the Government conceded were erroneously classified as articles or wares, not specially provided for, in paragraph 397 of the Tariff Act of 1930, and which it contended should have been classified as drawing instruments in paragraph 360 of said act, were held to be mathematical instruments in said paragraph 360, as claimed by the importer. The pantographs there in issue were described as being used for making a reduced, an enlarged, or an exact copy of a plane figure. Our appellate court, after setting forth from lexicographic authorities typical definitions of the terms "drawing" and "mathematical instruments," stated as follows:

From the foregoing definitions and kindred ones by other authorities, it seems to us that a drawing device or instrumentality means something broader than,

or at least different from, a mathematical instrument. The definitions of drawing above quoted imply something more than a mere precise tracing or reproduction of a map, design, drawing, or other picture. There is implied by drawing a certain originality of conception, although, as of course, there may be a drawing which is a reproduction of another drawing.

The instruments here at issue are shown to be capable of minute mathematical precision in producing the various outlines, or copies, which it is their function to produce, and, upon the whole, we are of the opinion that they are clearly comprehended within the term "mathematical instruments," as that term is used in paragraph 360, *supra*.

The description of the lay-out machine with turntable in issue, its method of operation, and its purpose, indicate to the court that it is designed to serve a mathematical function in its capacity to "plot from one point to another within approximately plus and minus 12 ten-thousandths of an inch" in the production of precision drawings. We are of the opinion, therefore, in the light of the holding of our appellate court in the *Weber* case, *supra*, that the instant lay-out machines are mathematical instruments of the kind provided for in paragraph 360 of the Tariff Act of 1930, as modified, as classified by the collector of customs.

The claim in the protest for classification of the imported articles as drawing instruments in said paragraph 360 is overruled. Other claims in the protest, having been abandoned, are dismissed.

Judgment will issue accordingly.